The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DION JAMAR COOPER,<br><br>Defendant. | NO. CR23-074 RSM<br><br>UNITED STATES SENTENCING MEMORANDUM |

## I. Introduction.

As is the case throughout the United States, King County has a serious gun violence problem. There are many factors contributing to this complex violent crime issue, but the sheer volume of guns on the streets is a primary driver. One of the main sources of crime guns is "straw purchasing" – when a person who can lawfully purchase a firearm does so surreptitiously on behalf of someone who cannot, such as a convicted felon. A straw purchaser intentionally subverts background check laws designed to keep guns away from dangerous people.

United States' Sentencing Memorandum - 1
*United States v. Cooper*, CR23-074 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Consistent with the priorities of Congress[1] and the Department of Justice[2], the United States Attorney's Office for the Western District of Washington prioritizes the investigation and prosecution of straw purchasing cases. These cases are resource-intensive and challenging. It is rare that the government has sufficient evidence to prove that a single firearm was straw purchased, let alone to uncover a much broader course of conduct as it has done in this case.

Dion Cooper is the largest known straw purchaser of firearms in the history of the Western District of Washington. He responsible for putting over 130 firearms on the streets and in the hands of criminals who could not legally acquire or possess them. To date, an astounding 54 of these firearms have been recovered as crime guns – found at crime scenes or otherwise recovered during criminal investigations. Law enforcement has not located the rest of Cooper's firearms, which means they are likely still in the hands of people who should not possess them, potentially wreaking havoc on our communities.

This case starkly demonstrates how harmful and dangerous the crime of straw purchasing can be. Simply put, Cooper is responsible for fueling a part of the gun violence problem that our community is struggling with. A high-end sentence of **41 months** of imprisonment is the most appropriate sentence in this case.

**II.    The Sentencing Guidelines Calculations.**

The government concurs with the Sentencing Guidelines calculations set forth in the Presentence Report. The total offense level is 20 and Cooper falls within Criminal History Category I, which yields an advisory sentencing range of 33-41 months.

//
//
//

---

[1] Cochrane, Emily, "Congress Passes Bipartisan Gun Legislation, Clearing It for Biden," NY Times (June 24, 2022), *available at:* https://www.nytimes.com/2022/06/24/us/politics/gun-control-bill-congress.html.

[2] "Attorney General Merrick B. Garland Delivers Remarks Announcing Charges Against Alleged Gun Trafficker, Department of Justice (June 13, 2022), *available at*: https://www.justice.gov/opa/speech/attorney-general-merrick-b-garland-delivers-remarks-announcing-charges-against-alleged.

United States' Sentencing Memorandum - 2
*United States v. Cooper*, CR23-074 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**III.    Sentencing Recommendation.**

The government recommends that the Court sentence the defendant to a total term of imprisonment of 41 months and a term of supervised release of three years, with all the conditions of supervised release recommended by the Probation Office. The various statutory sentencing factors support a custodial sentence of 41 months in this case, including, most prominently, the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; the history and characteristics of the defendant; and the need for the sentence to afford adequate deterrence to criminal conduct.

> **A. The Nature/Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense and to Provide Just Punishment.**

Cooper was identified as a straw purchaser of firearms after an armed robbery in the Rainier Valley area of South Seattle in January 2023. Complaint (Dkt. 1) at 6. During the robbery, a 25-year-old Asian female victim had just arrived home and was unloading her car when three unidentified black males approached her. One of the males pointed a handgun at her and demanded her belongings as another suspect got in the driver seat of her car. The victim handed over her phone and purse and the suspect punched her multiple times. The suspect in the driver's seat was unable to start the car and exited the vehicle. Fearing for her life, the victim jumped back in her car, locked the doors, and drove away. The suspects chased her in a white sedan, but she was able to elude them and eventually called 911. Seattle Police Department (SPD) officers responded but could not locate the suspects. The victim located a Glock semiautomatic pistol that the suspect left behind inside her vehicle and SPD officers recovered it. SPD traced the gun and determined it had been purchased by Cooper 50 days earlier. Complaint at 7.

SPD shared this information with ATF Special Agents, who began investigating other firearm purchases by Cooper. At the time this case was charged, ATF had identified 107 firearms that Cooper had purchased from various Federal Firearms Licensees (FFLs) between June 2021 and April 2023. Complaint at 7. That number is now up to a whopping *133 firearms*. Of those firearms, *none were in Cooper's possession* (on his

United States' Sentencing Memorandum - 3
*United States v. Cooper*, CR23-074 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

person or at his residence) when he was arrested in this case, confirming that they were all straw purchases for other people.³

The harm from Cooper's criminal activities is not theoretical. At the time of Cooper's arrest, 21 of his purchased firearms had been recovered during criminal investigations and traced by law enforcement. Complaint at 7. According to a more recent ATF analysis of gun tracing records, that figure is now up to *54 and counting*. Based this analysis, we know that Cooper's guns were used to commit, and were otherwise involved in, numerous crimes, including violent crimes such as: several armed robberies; two bank robberies with shots fired during one incident; several carjackings and assaults; numerous drive-by shootings; numerous other shots-fired incidents; and at least one homicide. And that still leaves nearly 70 of Cooper's firearms unaccounted for, undoubtedly still in the hands of criminals.

Moreover, according to the ATF analysis, all of the above-referenced crime guns were recovered from persons who were legally prohibited from possessing firearms, either because they were convicted felons and/or were underage juveniles. This is not surprising, given the nature of straw purchasing offenses. And we know that several of the guns Cooper purchased ended up in the hands of co-defendant Phillips, an armed drug trafficker with prior convictions for a violent crime (Assault) and drug trafficking offenses.

Notably, several of the recovered crime guns had very short "time-to-crime" periods (the amount of time between the firearm purchase and its recovery at a crime scene). These recovery periods included some as short as two days and others of six days, seven days, and eight days. This reflects that Cooper was purchasing firearms and turning them over to people who nearly immediately used them to commit violent crimes.

---

³ As noted above, Cooper is the most prolific known straw purchaser in the history of the Western District of Washington. This distinction was previously held by a defendant who was convicted of straw purchasing 41 guns – a mere one-third of Cooper's haul. *See United States v. Cranshaw*, CR21-080 RAJ, Dkt. 52-53 (defendant sentenced to a term of 8 months of imprisonment).

United States' Sentencing Memorandum - 4
*United States v. Cooper*, CR23-074 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Cooper put so many guns out on the streets that, since his arrest – on a weekly or monthly basis – ATF continues to learn of additional crime guns tied to Cooper. One example occurred on October 31, 2023, six months after Cooper's arrest. Late that night, Samuel Rezene (who had recently started a federal term of supervised release following a 90-month prison term for a firearms conviction) totaled his parent's vehicle in a one-car crash on Aurora Avenue North in Seattle. Rezene fled the scene on foot but was arrested shortly thereafter. Police officers found a loaded Glock pistol with a partially obliterated serial number in the crashed car.[4]

A trace confirmed that Cooper had purchased the Glock pistol on January 21, 2023. Further investigation of the firearm, including analysis through the ATF NIBIN database, revealed that the gun was a presumptive match (pending more formal ballistics comparisons) for shell casings recovered from four shots-fired crime scenes and one homicide:

- Drive-By shooting in South Seattle on February 2, 2023;
- Drive-By shooting in South Seattle on April 12, 2023;
- Shots-fired in King County on April 30, 2023;
- Shots-fired in South Seattle on May 28, 2023; and
- Homicide in South Seattle on September 3, 2023.

This havoc was wreaked in our community by only *one* of the guns that Cooper straw purchased. Importantly, these downstream effects were the reasonably foreseeable consequences of the choices Cooper made. As the Probation Office notes:

> [I]t is likely that Mr. Cooper knew these firearms had the potential to be used in future crimes against others. It is hard not to deduce based on the number of weapons bought, as well as who they were bought for, that the weapons would be used in harmful ways.

---

[4] On May 15, 2024, District Judge James L. Robart sentenced Rezene to a 24-month term of imprisonment for supervised release violations including Rezene's unlawful possession of the Glock firearm. *See United States v. Rezene*, CR16-185 JLR, Dkt. 152-153.

United States' Sentencing Memorandum - 5
*United States v. Cooper*, CR23-074 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Indeed, a straw purchaser's inability to control how a firearm is used is precisely what makes straw purchases dangerous in the first place. There is a greater risk that a straw-purchased firearm will be used to commit crime, considering that the entire reason for the straw purchase is to allow a prohibited person to possess a firearm (or to commit crimes with a firearm) that is registered in someone else's name. Cooper knew all of this but nonetheless continued to straw purchase numerous firearms over a two-year period. This was significantly more than an isolated, one-time lapse in judgment; it was a long-term course of concerted conduct.

The seriousness and dangerousness of Cooper's offense conduct warrants a sentence at the high end of the Guidelines range.[5]

### B.  The Defendant's History and Characteristics.

A sentence at the high end of the Guidelines range is also supported by three aspects of Cooper's background and characteristics that are particularly aggravating.

First, Cooper's Criminal History Category of I underrepresents his criminal record and prior contacts with the criminal justice system. Although the Probation Office correctly determined that Cooper has zero criminal history points, he has a misdemeanor conviction for Criminal Assistance which involved a forced-entry residential burglary (PSR ¶ 38); another misdemeanor Theft conviction in which the originally imposed deferred sentence was revoked (PSR ¶ 39); three convictions for Driving While License Suspended (PSR ¶ 41); a conviction for False Statement to a Public Servant (PSR ¶ 41); and four arrests in various cases that were later dismissed, including for domestic violence and stolen firearms offenses (PSR ¶ 41). As such, Cooper's criminal history is much more concerning than a typical defendant in Criminal History Category I.

---

[5] In recommending a sentence at the high end of the Guidelines range, the government is mindful that the Guidelines calculations understate the seriousness of the offense in terms of the number of firearms involved. Cooper's plea agreement is favorable to him in that the parties' agreed-upon Guidelines calculations are based only on the firearms that were seized from co-defendant Phillips, triggering a 4-level upward adjustment under USSG § 2K2.1(b)(1)(B) (between 8 and 24 firearms). *See* Plea Agreement ¶ 9(b). However, an 8-level upward adjustment could be applied when the offense involves between 100 and 199 firearms. USSG 2K2.1(b)(1)(D).

United States' Sentencing Memorandum - 6
*United States v. Cooper*, CR23-074 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Second, Cooper's background lacks the sort of mitigating circumstances we see far too often in other cases. He was raised by a middle-class family who always provided for him. PSR ¶ 49. His parents sent him to Job Corps in Eastern Washington during high school to separate him from friends who were gang members engaged in criminal activity. PSR ¶ 50. He has no identified mental health or serious substance abuse issues. PSR ¶¶ 58, 63. All of this is represented by Cooper's low ACE's score of 1. PSR ¶ 62. Simply put, Cooper had advantages that most defendants do not, but nonetheless engaged in this long-term course of serious and dangerous criminal conduct.

Lastly, Cooper's personal connection to the loss and suffering caused by gun violence should have made him particularly attune to the dangers of his straw purchasing crimes. Cooper's best friend in high school was "shot and killed at school due to gang activity." PSR ¶ 50. Later, another of his best friends was "shot and killed." PSR ¶ 52. Moreover, through the years, Cooper "has witnessed the deaths of many community members due to violence." PSR ¶ 52. The Probation Office treats this as a mitigating factor. *See* USPO Sentencing Recommendation at 6 ("[H]e has never properly dealt with these losses. . ."). But, at most, this is a double-edged sword for Cooper. He, of all people, should understand the harm that ensues when gang members and criminals are armed with firearms. Ironically, Cooper ignored his own personal experiences and willingly supplied criminals in our community with numerous firearms over a two-year period.

### C. The Need to Afford Adequate Deterrence to Criminal Conduct.

Gun violence is a complicated issue with several contributing factors and potential solutions. No single solution will fix this epidemic. But it is critical that, as one part of the overall solution to a complex problem, we continue to hold people accountable for breaking laws that exist specifically to reduce and prevent gun violence. This case presents the Court with an important opportunity to recognize the substantial harms of intentionally subverting backgrounds checks, to promote respect for the law against straw purchasing, and to send a message of general deterrence through its sentence. Given the broad scope of Cooper's crimes and the reverberating harm to our communities, he must

United States' Sentencing Memorandum - 7
*United States v. Cooper*, CR23-074 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

be held accountable for his conduct so that straw purchasing laws can be meaningfully enforced and others will be adequately deterred from committing similar crimes.

### IV. Conclusion.

For all the reasons set forth above, the government recommends that the Court sentence the defendant to a term of imprisonment of 41 months and a term of supervised release of three years, with all of the conditions of supervised release recommended by the Probation Office.

DATED this 25th day of October, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*s/ Todd Greenberg*
TODD GREENBERG
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-2636
Fax: 206-553-4440
Email: Todd.Greenberg4@usdoj.gov

United States' Sentencing Memorandum - 8
*United States v. Cooper*, CR23-074 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970